**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| K.C., an individual, | Case No. 22-cv-2683 |
| Plaintiff, | |
| | **JUDGE** _____ |
| v. | Related Cases: No. 19-cv-849 |
| | No. 21-cv-5022 |
| WYNDHAM HOTEL & RESORTS, INC., | No. 21-cv-4933 |
| AND CHOICE HOTELS | No. 21-cv-4934 |
| INTERNATIONAL, INC. | No. 21-cv-4935 |
| | No. 22-cv-1924 |
| Defendants. | |
| | **DEMAND FOR JURY TRIAL** |

**COMPLAINT**

COMES NOW, the Plaintiff K.C. ("Plaintiff" or "K.C."), by and through her undersigned

counsel, and respectfully submits her complaint for damages and makes the following averments.

**INTRODUCTION**

1.      Human sex trafficking is a form of modern-day slavery that exists illegally

throughout the United States and globally and is furthered by public lodging establishments.

2.      For decades, sex traffickers have brazenly operated in and out of hotels throughout

this country. Criminals paraded their misconduct openly on hotel properties while hospitality

giants pay only lip service to campaigns against sex trafficking, standing by to collect profits from

traffickers and their clientele at the expense of human life, human rights, and human dignity.

3.      The prevalence of this crime at hotels and motels is due to many factors, including

but not limited to, ease of access for buyers, the ability to pay in cash (non-traceability), the ability

to maintain anonymity, privacy, discretion, and permission.

1

4. Defendants Wyndham Hotel & Resorts, Inc. ("Wyndham") and Choice Hotels International, Inc. ("Choice") (collectively "Defendants") knew and have known for decades that sex trafficking repeatedly occurs under their brand flags.

5. Rather than taking timely and effective measures to thwart this epidemic, Defendants choose to ignore the open and obvious presence of sex trafficking on their branded properties, benefitting from the profit and fees created by rooms rented for this explicit and apparent purpose.

6. Plaintiff K.C. is just one of the estimated 40 million victims of human trafficking worldwide.[1] The sex trafficking industry alone pulls in an estimated $99 billion each year, making it the second largest illicit trade after the sale of all illegal drugs.[2] However, traffickers aren't the only profiteers. The hotel industry, including Defendants, makes millions from sexual slavery as traffickers and "johns" rent rooms where victims are sexually exploited night after night, while brands, property management, and staff look the other way. This mutually beneficial relationship fuels the epidemic, allowing traffickers and the hospitality industry to reap the benefits at the expense of victims' lives and dignity.

7. Plaintiff, K.C., a survivor of sex trafficking, brings this action for damages against Defendants pursuant to the federal civil remedy under 18 U.S.C. § 1595. Each Defendant, knowingly benefitted from participation in a commercial business venture that it knew or should have known to be engaging in sex trafficking acts in violation of 18 U.S.C. § 1591(a).

8. Defendants' decision to prioritize profits over protecting sex trafficking victims results in the repeated exploitation of countless victims like K.C. on their properties. K.C.'s

---

[1] *Profits and Poverty: The Economics of Forced Labor,* INTERNATIONAL LABOR ORGANIZATION (2017), https://www.ilo.org/global/topics/forced-labour/statistics/lang--en/index.htm.
[2] *Id.*

traffickers forced her onto Defendants' property where she was repeatedly raped and forced to perform commercial sex acts with "buyers" under threats of physical and psychological abuse.

9.     The American Hotel Industry's apathy towards human trafficking has allowed human trafficking in the United States to flourish. Defendants and other members of the hospitality industry are and have long been aware of the prevalence of human trafficking, particularly sex trafficking, at hotels in general and at the Defendants' hotels worldwide and at their own properties. Defendants and others in the industry have access to much public information on the prevalence of human trafficking at hotels, including reports by, among others, the Polaris project created for the use of the hospitality industry.

10.    The hospitality industry, speaking through industry organizations, has in recent years been increasingly vocal about its supposed "unified commitment" to combat human trafficking. Unfortunately, the near-total lack of concrete action by Defendants and the rest of the hospitality industry shows that the industry in fact has a "unified commitment" to the very opposite:  continuing with business as usual, so that Defendants and all industry participants continue to profit from human trafficking.

## **PARTIES**

11.    Plaintiff K.C. is a natural person and a resident and citizen of Ironton, Ohio.

12.    Plaintiff is a victim of trafficking pursuant to 22. U.S.C. § 7102(17) and 18 U.S.C. § 1591(a), and a victim of a "severe form of trafficking" as defined under 22 U.S.C. § 7102(16).

   a.     Due to the sensitive and intimate nature of the issues, Plaintiff K.C. requests that this Court grant a protective order pursuant to Fed. R. Civ. P. 26(c) to permit her to proceed under a pseudonym and to ensure that Defendants

maintain the confidentiality of Plaintiff's identity throughout the pendency of this lawsuit and after.[3]

b.     Generally, under the Federal Rules of Civil Procedure, pleadings must state the name of all parties.[4] However, there are exceptions when the issues involved are of a sensitive and highly personal nature.[5] For good cause, the Court may issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense.[6]

c.     Here, granting pseudonym status and proceeding under seal is warranted because this litigation will involve the disclosure of stigmatizing sexual information, including rape. Plaintiff fears the stigma from her family, friends, employer, and community if her true identity is revealed in the public record.

d.     Plaintiff should not be compelled to disclose her identity in order to maintain her privacy and safety. Plaintiff's privacy interest substantially outweighs the customary practice of judicial openness.[7]

---

[3] In cases where the plaintiffs have demonstrated a need for anonymity, the district court should use its powers to manage pretrial proceedings under Fed. R. Civ. P. 16(b), and to issue protective orders limiting disclosure of the party's name under Fed. R. Civ. P. 26(c), to preserve the party's anonymity to the greatest extent possible without prejudicing the opposing party's ability to litigate the case. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000).

[4] Fed. R. Civ. P. 10(a).

[5] A district court must balance the need for anonymity against the general presumption that the parties' identities are public information and the risk of unfairness to the opposing party. *See, e.g., M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir.1998); *James v. Jacobson*, 6 F.3d at 238 (4th Cir. 1993); *Doe v. Frank*, 951 F.2d 320, 323–24 (11th Cir.1992); *Doe v. Stegall*, 653 F.2d at 186 (5th Cir.); *see also Doe v. Frank* at 323 (11th Cir. 1992) (holding that a plaintiff should be permitted to proceed anonymously in cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity).

[6] Fed. R. Civ. P. 26(c).

[7] *Does I thru XXIII, 214 F.3d* at 1068 (joining its 4th, 5th, 10th, and 11th sister circuits in holding that a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity).

e. Moreover, Defendants will not be prejudiced. Plaintiff will agree to reveal her identity to Defendants for the limited purpose of investigating Plaintiff's claims once the parties have entered into a protective order. Plaintiff simply seeks redaction of Plaintiff's personal identifying information from the public docket and assurances that Defendants will not use or publish Plaintiff's identity in a manner that will compromise her personal life or future employment prospects.

13. **Defendant Wyndham Hotel & Resorts, Inc.** ("Wyndham") is a large hotel brand with nearly 9,000 branded properties worldwide. It is a Delaware corporation with its principal place of business in Parsippany, NJ and can be served through its registered agent, Corporate Creations Network, Inc., at 119 E. Court Street, Cincinnati, OH 45202.

14. Wyndham is the successor entity to Wyndham Worldwide Corporation and retains successor liability for the wrongful acts of its predecessor. Where applicable, references to Wyndham in this Complaint refer also to Wyndham Worldwide Corporation.

15. Wyndham owns, supervises, manages, controls, and/operates the Days Inn located at 1212 E Dublin Granville Rd, Columbus, OH 43229, and the Super 8 located at 1078 E Dublin Granville Rd, Columbus, OH 43229 ("Columbus Days Inn and Super 8").

a. Days Inn and Super 8 by Wyndham are a Wyndham Hotel & Resorts, Inc. brand property.[8]

b. Defendant Wyndham is the principal in an agency relationship with the Days Inn and Super 8. It is both directly and vicariously liable for the acts and/or omissions of the staff at its branded hotels, including the Columbus Days Inn

---

[8] *Our Brands*, WYNDHAM HOTELS, https://www.wyndhamhotels.com/wyndham-rewards/our-brands (last visited Jun. 15, 2022).

5

and Super 8 where K.C. was trafficked. The Columbus Days Inn and Super 8 also has apparent agency for Wyndham so as to establish vicarious liability, in addition to actual agency relationship.

c. Wyndham ratified the actions and inactions of the Columbus Days Inn and Super 8.

d. Wyndham knowingly benefited, or received something of value, from its commercial business venture at the Columbus Days Inn and Super 8 through royalty payments, licensing fees, and percentages of the gross room revenue generated by the hotel operations, including rates charged through rooms where K.C. was trafficked, as well as in maintaining a positive public image for the Days Inn and Super 8 brand.

e. Wyndham is subject to the jurisdiction of this Court because it regularly conducts business in Ohio, including through the operation of numerous hotels in Ohio, such as the Columbus Days Inn and Super 8, contracting to supply services in Ohio. Wyndham has derived substantial revenue from services rendered in Ohio, has caused injuries to K.C. in Ohio, and profited from a commercial business venture which unlawfully permitted criminals to sell K.C. for commercial sex at the Columbus Days Inn and Super 8 in Ohio.

16.     **Defendant Choice Hotels International, Inc.** ("Choice") is one of the largest hotel franchisors in the world and offers its brand public lodging services through its affiliates, subsidiaries, and franchisees. It is a Delaware corporation with its headquarters in Rockville, Maryland and can be served through its registered agent, United States Corporation Company, at 50 West Broad Street, Suite 1330, Columbus, Ohio 43215.

17.     Choice owns, supervises, manages, controls, and/or operates the Knights Inn located at 1300 E Dublin Granville Rd, Columbus, OH 43229 and the Comfort Inn located at 1213 E Dublin Granville Rd, Columbus, OH 43229 ("Columbus Knights Inn and Comfort Inn").

a.  Knights Inn and Comfort Inn by Choice are a Choice Hotels International, Inc. brand property.[9]

b.  Defendant Choice is the principal in an agency relationship with the Columbus Knights Inn and Comfort Inn. It is both directly and vicariously liable for the acts and/or omissions of the staff at its branded hotels, including the Columbus Knights Inn and Comfort Inn where K.C. was trafficked. The Columbus Knights Inn and Comfort Inn also has apparent agency for Choice so as to establish vicarious liability, in addition to an actual agency relationship.

c.  Choice ratified the actions and inactions of the Columbus Knights Inn and Comfort Inn.

d.  Choice knowingly benefited, or received something of value, from its commercial business venture at the Columbus Knights Inn and Comfort Inn through royalty payments, licensing fees, and percentages of the gross room revenue generated by the hotel operations, including rates charged through rooms where K.C. was trafficked, as well as in maintaining a positive public image for the Knights Inn and Comfort Inn brand.

e.  Choice is subject to the jurisdiction of this Court because it regularly conducts business in Ohio, including through the operation of numerous hotels in Ohio,

---

[9] *Our Brands*, CHOICE HOTELS, https://www.choicehotels.com/about/brands (last visited Jun. 9, 26 2022).

such as the Columbus Knights Inn and Comfort Inn, contracting to supply services in Ohio. Choice has derived substantial revenue from services rendered in Ohio, has caused injuries to K.C. in Ohio, and profited from a commercial business venture which unlawfully permitted criminals to sell K.C. for commercial sex at the Columbus Knights Inn and Comfort Inn in Ohio.

## JURISDICTION AND VENUE

18.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because Plaintiff resides within this District and a significant part of the acts and omissions giving rise to the cause of action occurred in this District.

20.     Pursuant to Southern District of Ohio Local Rule 3.1(b), this case is related to Case Nos. 2:2021-cv-04935, 2:2019-cv-00849, 2:2021-cv-04933, 2:2021-cv-04934, 2:2022-cv-01924, and 2:2021-cv-05022 currently pending before Chief Judge Algenon L. Marbley.

## FACTUAL BACKGROUND

### INTRODUCTION

21.      This case brings claims against major hotel brand corporations for violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA") 18 U.S.C. § 1595(a).

22.     Defendants are complicit in the world's fastest growing crime.[10]

---

[10] *Human Trafficking is the World's Fastest Growing Crime*, THE ADVISORY BOARD (May 22, 2017, 9:30 AM), https://www.advisory.com/daily-briefing/2017/05/22/human-trafficking.

23.    The TVPRA prohibits Defendants from engaging in any venture they know or should know involves trafficking, and thereby establishes a non-delegable duty of reasonable care to detect and avoid participation in what they know or should know involves a trafficking venture.

24.    The hospitality industry and Defendants' Brand hotels are at the center of the sex trafficking trade. Countless research, news, and nonprofits have confirmed the "obvious nexus" between human trafficking and hotels crucial role as the venue for selling commercial sex.[11]

25.    An overwhelming majority of commercial sex trafficking transactions occur within the hospitality industry as traffickers use hotels as the hub of their operations.[12] Inside, the victims are harbored, raped, assaulted, and forced to service buyers who come to the hotel solely to purchase sex.

26.    In the United States, as much as 63% of all trafficking incidents happen in hotels ranging from luxury to economy.[13]

27.    A recent survey of survivors who called the National Human Trafficking Hotline found 60% had been forced to engage in commercial sex within the confines of a hotel or motel during their trafficking, and 75% had stayed in a hotel or motel during travel or otherwise directly encountered a hotel or motel at some point during their trafficking.[14]

---

[11] Brittany Anthony, *On-Ramps, Intersections, and Exit Routes: A Roadmap for Systems and Industries to Prevent and Disrupt Human Trafficking,* Hotels and Motels, POLARIS 16-23 (Jul. 2018) https://polarisproject.org/wp-content/uploads/2018/08/A-Roadmap-for-Systems-and-Industries-to-Prevent-and-Disrupt-Human-Trafficking-Hotels-and-Motels.pdf; *see also Hotels & Motels Recommendations*, POLARIS https://polarisproject.org/hotels-motels-recommendations; Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/ honorstheses/3.
[12] Bradley Myles, *Combating Human Trafficking in the Hotel Industry*, HUFFINGTON POST (Jul. 22, 2015), https://www.huffpost.com/entry/combating-human-trafficking-in-the-hotel-industry_b_ 7840754 .
[13] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hospitality Industry*, CORNELL HOSPITALITY REPORT, 15(15), 3-10 (2015).
[14] *On-Ramps, Intersections, and Exit Routes,* POLARIS (2018), https://polarisproject.org/wp-content/uploads/2018/08/A-Roadmap-for-Systems-and-Industries-to-Prevent-and-Disrupt-Human-Trafficking-Hotels-and-Motels.pdf.

28.     Hotels have long profited from their reputations as havens of privacy and discretion for the offending. Hotels offer anonymity and non-traceability, making them ideal venues for crime and, in particular, sex trafficking. In addition, "buyers" purchasing people for sex, typically choose to engage in trafficking away from their home, naturally leading to the increased involvement of hotels.

29.     As part of their conspiracy, to save costs and continually reap millions of dollars in profits, Defendants generally refusal to adopt and enforce company-wide anti-trafficking policies, train staff on what to look for and how to respond, failed to conduct audits confirming that training had been implemented and that human trafficking occurrences were being prevented on hotel properties and/or establish safe and secure reporting mechanisms for those at the point of sale. Defendants further failed to enact robust policies and practices to ensure continuous, directed action to combat human trafficking on their properties. As a result, the sex trade continues to thrive at Defendants' branded properties, and everyday victims of human trafficking like K.C. are repeatedly exploited within the rooms of Defendants branded properties across the country.

30.     Defendants are jointly and severally liable for the Plaintiff's damages in this case.

31.     Plaintiff's injuries are indivisible.

32.     The TVPRA provides for joint and several liability.

**THE SEX TRAFFICKING OF PLAINTIFF K.C.**

33.     K.C. first met her traffickers when she was 34 years old.

34.     By means of a combination of violence, threats, illegal substances, and dependence on basic survival necessities such as, but not limited to, food, water, transportation, shelter, and clothing. K.C. was held captive and sold for sex by her traffickers approximately from 2013 to 2020.

35.     During the time that she was trafficked, K.C.'s traffickers frequently rented rooms at the Defendants' hotel locations because such rooms provided convenient, anonymous, and relatively central locations to which they could invite "johns" for the purpose of forcing K.C. to have sex with those "johns" for money.

36.     Throughout her trafficking, K.C.'s traffickers connected with "johns" willing to abuse K.C. for money by posting or causing to be posted entries on Craigslist advertising for K.C.'s availability for commercial sex.

37.     Day after day, K.C. was sold and forced to perform sexual acts with multiple "johns" in a single night until her trafficker's told her to take a break. If K.C. didn't make enough money, her traffickers would violently beat her.

38.     Over the course of a grueling eight (8) years, while under the coercive control of traffickers and "johns", K.C.'s traffickers rented rooms at, and forced her to have sex for money within, at least the following hotels:

> a.   Days Inn by Wyndham at 1212 E Dublin Granville Rd, Columbus, OH 43229;
>
> b.   Super 8 by Wyndham at 1078 E Dublin Granville Rd, Columbus, OH 43229;
>
> c.   Knights Inn by Choice at 1300 E Dublin Granville Rd, Columbus, OH 43229;
>
> d.   Comfort Inn by Choice at 1213 E Dublin Granville Rd, Columbus, OH 43229;

39.     During the time she was trafficked, K.C.'s traffickers constantly shuffled her back and forth among hotels, often visiting the same hotels repeatedly at intervals, including the hotels listed above.

40.     While at the Defendants' hotels, K.C.'s traffickers administered physical violence and withheld food and water to ensure that she could not escape.

11

41.     During her captivity at Defendants' hotels, including the above listed locations, K.C. was subjected to rape, frequent physical and verbal abuse, malnourishment, psychological torment, kidnapping, and false imprisonment permitted by Defendants' brand hotel employees and managers.

42.     At the above listed hotels, K.C. encountered the same staff on multiple occasions. Defendants' staff would have seen the signs of K.C.'s deterioration brought on by the abuse perpetrated by her traffickers, including bruising and physical and verbal abuse occurring in public areas of Defendants' properties.

43.     Traffickers of K.C. followed a repetitive and routine procedure during stays at the Defendants' hotels to which Defendants' hotels knew or should have known of K.C.'s trafficking because of a variety of factors detailed below:

**THE SEX TRAFFICKING OF K.C. AT THE DAYS INN BY WYNDHAM**

44.     Starting in 2012, Plaintiff K.C. was subjected to sex trafficking at the Wyndham branded, Days Inn hotel located at 1212 E Dublin Granville Rd, Columbus, OH 43229, when she was 34 years old.

45.     For approximately eight years, Plaintiff's traffickers rotated days at a time at this location, encountering the same. Plaintiff's traffickers were constantly fighting with K.C. One day, Plaintiff's traffickers violently beat her, that she ran to the front desk asking for police help to which the front desk denied her aid. K.C. was able to obtain a phone from a guest to call the police, but when the police arrived on site, the trafficker stated if K.C. were to say anything about the trafficking, he would kill her and her family. K.C. thus indicated to the police she was fine, and it was not her that called the police.

46.     Further, with each stay at the Days Inn by Wyndham, it resulted in several consistent red flags, including, but not limited to: Paying for stays in cash; Paying for extended

stays on a day-by-day basis; Requesting a room away from other guests; Obvious signs of illegal drug use; Frequent requests for linen changes; Unusually large numbers of used condoms left in the trash; Unusually large number of male visitors asking for K.C. or her traffickers at the front desk; Unusually large number of male visitors going in and out of K.C.'s room; Physical abuse in public spaces; Visible signs of prior/private physical abuse; Asking the front desk not to be disturbed; and Loud noises of abuse or other violence audible to staff and/or other rooms.

47.     Plaintiff was repeatedly raped and otherwise sexually abused thousands and thousands of times at the Days Inn hotel.

48.     These red flags were open and obvious to anyone working at the Days Inn by Wyndham and lasted continuously for eight years.

**THE SEX TRAFFICKING OF K.C. AT THE SUPER 8 BY WYNDHAM**

49.     Starting in 2012, Plaintiff K.C. was subjected to sex trafficking at the Wyndham branded, Super 8 located at 1078 E Dublin Granville Rd, Columbus, OH 43229 when she was 34 years old.

50.     For approximately eight years, Plaintiff's traffickers rotated days at a time at this location, encountering the same staff. In fact, Plaintiff's traffickers would pay the staff of the Super 8 by Wyndham to allow "johns" to come to the hotel and have parties.

51.     Further, with each stay at the Super 8 by Wyndham, it resulted in several consistent red flags, including, but not limited to: Paying for stays in cash; Paying for extended stays on a day-by-day basis; Requesting a room away from other guests; Obvious signs of illegal drug use; Frequent requests for linen changes; Unusually large numbers of used condoms left in the trash; Unusually large number of male visitors asking for K.C. or her traffickers at the front desk; Unusually large number of male visitors going in and out of K.C.'s room; Visible signs of

13

prior/private physical abuse; Asking the front desk not to be disturbed; and Loud noises of abuse or other violence audible to staff and/or other rooms.

52.     There would be constant fighting and yelling between the traffickers, johns, and K.C. coming from the room at the Super 8. Police were called to this location numerous times because of the noise complaints and still nothing was done by Defendant to stop the traffickers. As long as the staff was paid by K.C.'s traffickers, they did not care what was occurring, no matter how many times they witnessed K.C. physically deteriorated.

53.     Plaintiff was repeated raped and otherwise sexually abused thousands and thousands of times at the Super 8 by Wyndham.

54.     These red flags were open and obvious to anyone working at the Super 8 by Wyndham and lasted continuously for eight years.

**THE SEX TRAFFICKING OF K.C. AT THE KNIGHTS INN BY CHOICE**

55.     Starting in 2012, Plaintiff K.C. was subjected to sex trafficking at the Choice branded, Knights Inn located at 1300 E Dublin Granville Rd, Columbus, OH 43229 when she was 34 years old.

56.     For approximately eight years, Plaintiff's traffickers rotated days at a time every at this location, encountering the same staff.

57.      Further, with each stay at the Knights Inn by Choice, it resulted in several consistent red flags, including, but not limited to: Paying for stays in cash; Paying for extended stays on a day-by-day basis; Requesting a room away from other guests; Obvious signs of illegal drug use; Frequent requests for linen changes; Unusually large numbers of used condoms left in the trash; Unusually large number of male visitors asking for K.C. or her traffickers at the front desk; Unusually large number of male visitors going in and out of K.C.'s room; Visible signs of

prior/private physical abuse; Asking the front desk not to be disturbed; and Loud noises of abuse or other violence audible to staff and/or other rooms.

58.    At this Knights Inn by Choice location, the rooms were located outside with cameras in the parking lot pointing towards the walkway to the rooms. There was constant partying, foot traffic, yelling, music, and a lot of drug deals occurring at this location. Accordingly, the front desk employees had access to the cameras. The traffic and parade of men coming in and out of the Knights Inn was obvious and noticeable.

59.    Plaintiff was repeatedly raped and otherwise sexually abused thousands and thousands of times at the Knights Inn hotel.

60.    These red flags were open and obvious to anyone working at the Knights Inn by Choice and lasted continuously for eight years.

**THE SEX TRAFFICKING OF K.C. AT THE COMFORT INN BY CHOICE**

61.    Starting in 2012, Plaintiff K.C. was subjected to sex trafficking at the Choice branded, Comfort Inn located at 1213 E Dublin Granville Rd, Columbus, OH 43229 when she was 30 years old.

62.    For approximately eight years, Plaintiff's traffickers rotated days at a time every at this location, encountering the same staff.

63.    Further, with each stay at the Comfort Inn by Choice, it resulted in several consistent red flags, including, but not limited to: Paying for stays in cash; Paying for extended stays on a day-by-day basis; Requesting a room away from other guests; Obvious signs of illegal drug use; Frequent requests for linen changes; Unusually large numbers of used condoms left in the trash; Unusually large number of male visitors asking for K.C. or her traffickers at the front desk; Unusually large number of male visitors going in and out of K.C.'s room; Visible signs of

prior/private physical abuse; Asking the front desk not to be disturbed; and Loud noises of abuse or other violence audible to staff and/or other rooms.

64.     The Comfort Inn front desk staff would laugh and ridicule K.C. making statements to K.C. that she was a "slave" to her traffickers and good for nothing else.

65.     There would be public fighting with the johns and K.C.'s traffickers, loud music, drug deals after dawn, and even broken windows and doors from fighting at this Comfort Inn by Choice location.

66.     Plaintiff was repeatedly raped and otherwise sexually abused thousands and thousands of times at the Comfort Inn by Choice.

67.     These red flags were open and obvious to anyone working at the Comfort Inn by Choice and lasted continuously for eight years.

**BRAND HOTEL DEFENDANTS' CONTROL OVER THEIR HOTEL LOCATIONS**

68.     Upon information and belief, it is standard practice in the hospitality industry, followed by all Hotel Defendants, for parent companies to set exacting brand quality standards reaching everything from the temperature at which coffee shall be served to the number of pillows that shall be placed on each bed, types of funds accepted, and when, where, and how guests should be greeted.

69.     The Hotel Defendants provide to their branded properties signage on and in front of the building intended to assure customers that, if they check into that hotel, they can expect an experience consistent with the parent hotel brand. The same brand is emblazoned on everything in the hotel, from the pens on the bedside table to the staff uniforms at the front desk.

70.     Defendants provide their branded properties branded name recognition, a marketing campaign, and hotel listings in the Global Distribution System and other online travel agency databases, as well as hotel locations with access to their brand-wide central reservation

systems, 800 numbers, revenue management tools, brand loyalty programs, and company websites. Thus, booking and room reservations are to a large extent controlled by the Hotel Defendants.

71. Upon information and belief, per the relevant franchise agreements, the Hotel Defendants may enforce their brand standards by means of periodic inspections of hotel locations, backed up with the ultimate threat of termination of the franchise agreement.

72. Upon information and belief, the Hotel Defendants' brand standards are so strict as to bar entirely certain efforts to combat trafficking, for instance by prohibiting the prominent placement of informational signs within hotel rooms offering to help victims escape.

73. It is further a standard practice in the hospitality industry, upon information and belief, followed by all Hotel Defendants, for parent companies to exercise significant control over the employment decisions of their hotel locations.

74. The Hotel Defendants and their hotel locations exhibit a significant degree of interrelated, intermingled, and unified operations at the locations at which Plaintiff was trafficked. Upon information and belief, the Hotel Defendants promulgate policies, procedures, and standards governing the hiring, training, retention, and advancement of on-the-ground employees and setting their rates of pay, which together exert significant control over all employment decisions made at the individual hotel locations at which Plaintiff was trafficked.

75. On information and belief, the Hotel Defendants utilize some of these funds to monitor the brand standards and to offer training to hotel operators and franchisees.

76. Under federal labor regulations, the Hotel Defendants are each considered joint employers of the employees at their locations at which Plaintiff was trafficked.

77.     Specifically, the Hotel Defendants control the creation and promulgation of policies relating to training employees to recognize and respond to human trafficking, and the Hotel Defendants determine whether such training shall be mandatory.

78.     Despite their knowledge that few, if any, employees at their hotel locations actually receive trainings if the same are not mandated, the Hotel Defendants have failed to mandate such training on any significant scale or at the specific locations where Plaintiff was trafficked.

79.     On information and belief, the Hotel Defendants require their hotel locations to pay approximately 10% of gross revenue back to the Hotel Defendants for the privilege of using the Hotel Defendants' names and following their brand standards.

**HOTEL DEFENDANTS' KNOWLEDGE OF SEX TRAFFICKING AT THEIR LOCATIONS**

80.     Defendants are aware that the hospitality industry is a major life source of the human trafficking epidemic both in the U.S. and abroad.[15] The United Nations,[16] international non-profits,[17] and the U.S. Department of Homeland Security,[18] have documented this well-known epidemic of human trafficking for years and brought particular attention to the indispensable role of hotels. Defendants cannot help but be aware of the public outcry against human trafficking, especially when so much of the uproar surrounds their industry.

---

[15] Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

[16] *Global Report on Trafficking in Persons,* UNITED NATIONS OFFICE ON DRUGS AND CRIME (2020), 84 8available at https://www.unodc.org/documents/data-analysis/tip/2021/GLOTiP_2020_15jan_web.pdf; See also *We must act together to fight exploitation and human trafficking in tourism, say United Nations and international partners,* UNITED NATIONS OFFICE ON DRUGS AND CRIME (April 24, 2012) available at https://www.unodc.org/unodc/en/press/releases/2012/April/we-must-act-together-to-fight-exploitation-and-human-trafficking-in-tourism-say-united-nations-and-international-partners.html

[17] The Polaris Project and ECPAT-International have published extensive reports and professional toolkits on human trafficking in the hospitality industry for years.

[18] Human Trafficking and the Hospitality Industry, U.S. DEPARTMENT OF HOMELAND SECURITY (2020), available at https://www.dhs.gov/blue-campaign/hospitalityindustry; Hospitality Toolkit, U.S. DEPARTMENT OF HOMELAND SECURITY (2016), available at https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf

81.     For example, in 2004 End Child Prostitution and Trafficking ("ECPAT-USA") launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States, identifying the steps companies would need to take to prevent child sex trafficking. ECPAT-USA identified hotel-specific best practices for preventing sex trafficking, such as: (1) not renting by the hour; (2) not permitting cash payments; (3) monitoring online sex ads such as Craigslist and Backpage for their hotel name and pictures of the rooms; (4) changing Wi-Fi passwords in rooms and cafes regularly; (5) watching for a trend of visitors to the same room; (6) being aware of rooms with excess condoms, lubricants, and towels; (7) requiring all visitors to be logged, including guest name, visitor name, arrival time, departure time, and room number.

82.     Further, nationwide campaigns have recognized the issue of human trafficking in the hotel industry and the lack of internal policies to address the issue and took initiative as early as 1997 with the United Nations Blue Heart Campaign[19] and domestically in 2010 with the Department of Homeland Security's Blue Campaign.[20] These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry and both campaigns released free online resources and toolkits publicly accessible to any entity concerned with human trafficking.

83.     The Hotel Defendants, on information and belief, have access to individual hotel location do-not-rent ("DNR") lists that often list reasons for the refusal to rent, including the suspicion of human trafficking. The Hotel Defendants nevertheless do not share such information

---

[19] *The Blue Heart Campaign,* UNITED NATIONS (2022),
https://www.unodc.org/blueheart/#:~:text=The%20Blue%20Heart%20Campaign,help%20prevent%20this%20heino us%20crime.
[20] *DHS Blue Campaign Five Year Milestone*, DEP'T OF HOMELAND SECURITY (Jul. 22, 2015),
https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone.

with other hotel locations, thereby preventing other of their hotel locations from acting to protect the victims of such suspected human traffickers.

84. The Hotel Defendants also have access to public police reports, news reports and internal reports generated by customers and employees, regarding sex trafficking at their own hotel locations in particular.

85. The Hotel Defendants have access to reviews left by guests on websites such as www.tripadvisor.com, www.yelp.com, www.google.com, and others, wherein guests frequently complain about the prevalence of obvious prostitution, hearing physical violence by pimps, and other signs of human trafficking.

86. A brief examination of just a handful of examples for each Hotel Defendant suffices to show the extraordinary frequency with which the Hotel Defendants have long received and continue receiving evidence and reports that human trafficking runs rampant at their hotel locations:

**WYNDHAM**

a. Regarding a stay in November 2010 at the Days Inn by Wyndham located at 1212 East Dublin Granville Rd. Columbus, OH 43229, a hotel customer wrote a review saying, "PROSTITUTE? So this is by far the worst hotel EVER! First i had to walk to the front clerk while looking at a discusting hole in the wall. poorest quality their is mold on the walls, holes, scraping paint and wallpaper. after getting my room number, and started walking to my with my two kidsand wife, note that my kids were both 6 at the time. with a suprise at the door, there was a prostitute. a prostitute who called herself dillie? saying she was waiting for her man she called hustler? i was

horrified having the thought of my children having to look at a half naked prostitute infront of me. i felt like a falure father. the prostitute wouldent stop fighting for the room eventhough it was ours, until we had to call the police to get her out....HORRIBLE PLACE TO STAY NEVER AGAIN DAMMIT. by the way there wer maggets and ants in my room. Lets just say that if I had to stay at this "hotel" or die................I would rather die."

b. Regarding a stay in May 2014 at the Days Inn by Wyndham located at 1212 East Dublin Granville Rd. Columbus, OH 43229, a hotel customer wrote a review saying, "This place is super shady.  We checked in and then checked out about 15 minutes later.  From the parking lot you could see where some of the windows were broken out on the second floor.  One room on the base floor had all the furniture pushed to the center of the room and the mattress warped in plastic (use your imagination)…this was no place to spend the night."

c. Regarding a stay in October 2013 at the Super 8 by Wyndham located at 1078 E Dublin Granville Rd, Columbus, OH 43229, a hotel customer wrote a review saying, "The reception staff was rude, I saw a couple guys jump in over the wall into hotel complex. Horrible hotel was rated 2.5 stars but was not worth even half a star. There was smoke smell in the room, in the corridor everywhere, there were pimps and prostitutes and drug peddlers all over the hotel, me and wife somehow spent one night and moved out next morning asap. Nobody should stay here even for a moment, I think this place should be forced to close down."

d.  Regarding a stay in October 2018 at the Super 8 by Wyndham located at 1078 E Dublin Granville Rd, Columbus, OH 43229, a hotel customer wrote a review saying, "I've probably stayed in worse but I can't remember when. Scary, scary, scary!! Drug dealers and prostitution rampant all night long. Kept imagining what the room would look like with a black light. Broken lock on the door. Filthy room. I actually spread the towels out on the bed and slept on top of them as I wasn't sure what I would catch from the bed linens. Would not have stayed if there were any other rooms available within 15miles and i called them all."

e.  In 2015, a judge ordered the Super 8 hotel at 1078 E. Dublin-Granville Rd. to shut down for drugs and prostitution.

## CHOICE

a.  Regarding a stay at the Comfort Inn by Choice on 1213 E Dublin Granville Rd, Columbus, OH 43229, a hotel customer wrote a review saying, "The worst hotel in America I wouldn't have even given them the one star but you have to put something. Staff very rude and unprofessional they are nasty don't change the sheets or do a good job cleaning your room oh yeah and they stole from me and my roommates while our company stayed there for almost a month. Nothing but drug dealers and prostitution going on all day and night this place deserves to be shutdown immediately. Oh here's a picture of one of the crackheads laying on the stairs in the hallway cocain is a hell of a drug. They deserve 5 thumbs down they ruined this company's name."

b. Regarding a stay at the Comfort Inn by Choice on 1213 E Dublin Granville Rd, Columbus, OH 43229, a hotel customer wrote a review saying, "Very poor customer service, maids service lousy and hotel nasty, drug infested, loitering, prostitutes. Maids wouldn't clean the rooms. I took dirty stained linen off my bed and they put it back on two days straight. Had to go get new sheets and put on my bed and the maids never put any other cover on my bed for the duration of my stay. The manager was never around too follow up on complaints. If ever visiting Columbus, Ohio do not stat at this hotel it is not safe!!!"

c. Regarding a stay in 2015 at the Knights Inn by Choice located at 1300 E Dublin Granville Rd, Columbus, OH (now shut down), a hotel customer wrote a review saying, "This place is disgusting, I stepped in and tired old me opened the sheets and then all the sudden I saw bugs, I googled them to see what they were and it was bed bugs, as I was going to complain a woman/man approached me and asked "If I was the guy that ordered her off backpage" that's when I was done, prostitutes, bugs, disgusting and then on top of that there's young kids all over there drinking and having "Hotel parties" worse hotel in Columbus and needs shut down."

d. The Columbus Dispatch indicated a judge had ordered the Knights Inn by Choice located at 1300 E Dublin Granville Rd, to be shut down November 2014 as it had been a haven for drug dealers and prostitutes. Police had been called there 785 times from January 2012 to November 2014.

23

## DEFENDANTS FACILITATED THE TRAFFICKING OF K.C.

87.     Each Defendant is a signatory of the Code[21] and thereby have promised to adopt these policies to combat trafficking. Yet, Defendants have failed to implement most, if not all of these policies.

88.     Defendant Wyndham is a face and signatory to the ECPAT anti-trafficking knowledge, guidance, and information necessary to prevent human trafficking, and Wyndham publicly committed to participate in the programs shown to assist in identifying and preventing sex trafficking inside its brand hotels. Therefore, Wyndham should not only have created effective Brand standards for implementation, mandates, and operations, but also enforced them.

89.     Defendant Choice is a face and signatory to the ECPAT anti-trafficking knowledge, guidance, and information necessary to prevent human trafficking, and Choice publicly committed to participate in the programs shown to assist in identifying and preventing sex trafficking inside its brand hotels. Therefore, Choice should not only have created effective Brand standards for implementation, mandates, and operations, but also enforced them.

90.     Defendants profited from the sex trafficking of Plaintiff K.C. Defendants rented rooms to K.C.'s traffickers when they knew, or should have known, that human trafficking was prevalent within their branded properties and at the specific locations where K.C. was trafficked. The hotel staff, especially front desk staff, at Defendants properties knew or should have known of the obvious signs of K.C.'s trafficking.

91.     Defendants benefited from the steady stream of income that K.C.'s traffickers and "johns" bring to their hotel brands. Defendants profited from each and every room that K.C.'s traffickers and customers rented.

---

[21] *See Our Code Members,* ECPAT, https://www.ecpatusa.org/code-members

92.     Defendants have made a public commitment to combat human trafficking, and thus, are aware that trafficking is a common problem in the hospitality industry. Defendants should have been aware of human trafficking occurring at the locations where K.C. was trafficked given Defendants access to information, such as police reports, news articles, complaints, and negative reviews regarding the specific locations and surrounding areas.

93.     Moreover, Defendants repeatedly collected data on K.C., her traffickers, and her "johns" from her many stays at Defendants hotels, including but not limited to room reservations, identification and payment information, data from websites visited on Wi-Fi, and other guest data. Defendant's employees witnessed the obvious signs of K.C.'s trafficking including signs of abuse, frequent male visitors coming in and out of the room, condoms in the trash, loud yelling and fighting, and others. Despite having access to all this information for years, Defendants failed to take reasonable measures to stop sex trafficking from occurring in their hotels. If Defendants would have taken proper measures, K.C. and other victims like her, would not have been trafficked at their locations.

94.     Defendants failed to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to prevent sexual exploitation on their properties. Defendants maintained their deficiencies to maximize profits by:

        a.  Failing to mandate and minimizing costs of training employees and managers on how to spot the signs of human trafficking and sexual exploitation;

        b.  Lowering operating costs and management costs by failing to analyze the data they received regarding criminal activity and customer reviews that indicated sex trafficking was occurring and taking the steps necessary to remedy the

problems;

c.  Collecting and utilizing massive amounts of data from all of their branded locations for marketing and other profit-driven purposes but failing to utilize this same data to combat sex trafficking in their hotels;

d.  Failing to refuse room rentals, or report guests to law enforcement, in order to maximize the number of rooms occupied and the corresponding rates, even if the rooms rented were to sex traffickers or buyers;

e.  Failing to monitor and track guest wireless network use for illicit commercial sex purposes or digital activity associated with human trafficking.

f.  Failing to institute proper security measures, including, but not limited to, employing qualified security officers or appropriate cybersecurity measures to actively combat human trafficking and sexual exploitation; and

g.  Failing to use its power as a parent company hold the franchisees accountable for contributing to the prevalence of sex trafficking on their properties.

95.  As a direct and proximate result of these egregious practices on the part of the Defendant Hotels, K.C. and victims of sex trafficking and exploitation like her, have been permanently injured and damaged physically, emotionally, psychologically, and financially.

## CAUSE OF ACTION

### COUNT 1: 18 U.S.C. § 1595 ("TVPRA")
### (AGAINST ALL DEFENDANTS)

96.  Plaintiff incorporates each foregoing allegation.

97.  Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591(a) and is entitled to bring a civil action under 18 U.S.C. §1595.

98. Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. § 1595. Specifically, Defendants had a statutory obligation not to benefit financially or receive anything of value from a venture that they knew, or should have known, engaged in violating the TVPRA. At all relevant times, Defendants breached this duty by facilitating human trafficking through their participation in the harboring of Plaintiff and her traffickers for the purposes of commercial sex induced by force, fraud, or coercion.

99. Defendants have benefited as a result of these acts, omissions, and/or commissions by keeping operating costs low, maintaining the loyal customer base that fuels the supply and demand of sex trafficking, and limiting mandatory regulations. Moreover, on each occasion they received payment for rooms or received payments or kickbacks for internet usage, Defendants directly benefitted from the sex trafficking of Plaintiff. The actions, omissions, and/or commissions alleged in this pleading were the "but for" and proximate cause of Plaintiff's injuries and damages.

100. Plaintiff has suffered substantial physical and psychological injuries as the result of being trafficked and sexually exploited at Defendants' hotels and properties.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment as follows:

a. Awarding Plaintiff all available compensatory damages for each cause of action, including but not limited to past and future medical expenses; past and future lost wages and loss of earning capacity; past and future emotional distress; consequential and/or special damages; all available noneconomic damages, including but not limited to pain, suffering, and loss of enjoyment of life;

b. Disgorgement of profits obtained through unjust enrichment;

27

    c.   Restitution;

    d.   Statutory and/or treble damages, where available;

    e.   Punitive damages;

    f.   Attorneys' fees and expenses;

    g.   The costs of this action;

    h.   Pre- and post-judgment interest; and

    i.   Any other relief the Court or jury deems appropriate.

## **JURY DEMAND**

Plaintiff hereby demands a trial by struck jury.

Dated: July 2, 2022

Respectfully submitted,

*/s/ Steven C. Babin, Jr.*
Steven C. Babin, Jr. (0093584)
Jennifer J. El-Kadi (00100660)
Kristina Aiad-Toss (0101336)
**Babin Law, LLC**
65 East State Street, Suite 1300
Columbus, Ohio 43215
T: 614-761-8800
E: steven.babin@babinlaws.com /
Jennifer.elkadi@babinlaws.com /
Kristina.aiad-toss@babinlaws.com